## Kemble's Estate.

*Will—Life tenant—Principal and income.*

Where testator authorizes his trustees to sell his estate real and personal, and to invest and reinvest the same, the investments and reinvestments to be subject to a trust under which the income was paid to his wife and children, and the executors exchange certain shares of stock belonging to the estate for the shares of another corporation in the proportion of ten for twelve, the additional two shares are a part of the principal of the estate, whether they represent a profit or not; but an option to subscribe for the stock of the new company, is income.

Argued Jan. 10, 1902.    Appeal, No. 237, Jan. T., 1901, by Mary F. Kemble, from decree of O. C. Phila. Co., April T., 1892, No. 53, sustaining exceptions to master's report in estate of William H. Kemble, deceased.    Before McCOLLUM, C. J., MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Exceptions to master's report.

PENROSE, J., filed the following opinion:

It is strongly suggestive of error in the theory upon which the master finds that the assets of the Metropolitan Traction Company of New Jersey had risen in value, in the single year following the testator's death, from $9,148,630 to $21,000,000, being a gain of $11,851,370, that he also finds that during the five years which preceded there had been no appreciable gain whatever, and that in the five which followed the first year, with all the advantage of an incorporation under the laws of New York, the gain was but $6,000,000. There is no evidence that the assets were valued at the death of the decedent, and nothing to explain this extraordinary rise or to show that it had not taken place in his lifetime. The presumption in favor of continuance is that the value was the same in September, 1891, as in September, 1892, and the burden of proving the contrary, by clear and specific evidence, is upon the party alleging the contrary. The error, as we think, lies in the assumption or inference that because the original valuation was carried on the books of the company and, necessarily, therefore, so set forth in the balance sheet of September, 1891, it was to be accepted as the actual value in the determination of questions with regard to principal and income as between tenants for life and those ultimately entitled to the principal of the estate of a stockholder.

There was no declaration of a dividend by the New Jersey company, nor was there any sale or transfer of its assets during the time that the decedent's estate was the owner of shares of its stock. A company organized under the laws of New York offered to stockholders of the New Jersey company, individually, to purchase their stock by giving in exchange twelve shares of the purchasing company's stock for ten of the New Jersey company, with the privilege, additionally, of subscribing for ten per cent at par, payable in instalments; and at a later date, the New York company, having thus acquired the control of the stock of the New Jersey company, voted for its dissolution and a transfer of its assets,—but this was not until a year after the sale or exchange of its stock by the decedent's estate.

But whether the value of the stock thus received in exchange was, either intrinsically or at the brokers' board, greater than that of the original stock, is not material. The will of the testator expressly declares that the executors shall at all times

have the right to "sell and dispose of" all or any part of his residuary estate, real or personal, "and to invest the proceeds thereof," without liability for loss "or the character of the investments made . . . . the investments and reinvestments . . . . to be in all respects subject to the provisions of" the will—that is to say, in trust, after payment of certain annuities, to pay the "income" to the wife and children of the testator in the proportions there specified. In such case, as held in Connolly's Estate, 198 Pa. 137, 141, 142, and in Graham's Estate, 198 Pa. 216, where the subject is exhaustively discussed by Judge OVER, whose very able opinions were adopted by the Supreme Court, the profit on sale of securities "is part of the principal of the estate, and as such to be held by the trustees." That the exchange in this case was one which inured greatly to the advantage of the cestuis que trust for life, no less than of those entitled to the principal, appears from the fact stated by the master that the former received as accumulated profits for five years on the 6,000 shares of the New York Company transferred to the Metropolitan Street Railway Company, in August, 1897, debenture bonds to the value of $120,000.

We concur, however, in the opinion of the master that the gain on sale of the stock acquired under the option to subscribe for stock of the New York Company, viz: $9,437.50, is to be regarded as income, and as such to be awarded: Eisner's Estate, 175 Pa. 148; Wright's Estate, 9 Pa. Dist. Rep. 447.

The exceptions are sustained to the extent indicated by this opinion.

*Error assigned* was the decree of the court sustaining the exceptions.

*Bernard Gilpin*, for appellant.—The additional shares were income: Allegheny v. Federal St., etc., Pass. Ry. Co., 179 Pa. 424; Lehigh Crane Iron Co. v. Com., 55 Pa. 448; Matson's Ford Bridge Co. v. Com., 117 Pa. 265.

*John G. Johnson*, for appellees.—No life tenant is entitled to any portion of the profits of a corporation whose shares are held in trust until the same have been declared as dividends; and the life tenant is only entitled to dividends of accumulated

profits to such extent as the accumulations have occurred subsequently to the creation of the trust: Connolly's Est., 198 Pa. 142; Graham's Est., 198 Pa. 216; Eisner's Est., 175 Pa. 143; Rose v. Barclay, 191 Pa. 597; City of Allegheny v. Federal Ct., etc., Pass. Ry. Co., 179 Pa. 421; Park's Est., 173 Pa. 193.

PER CURIAM, February 24, 1902:

The decree in this case is affirmed on the opinion of Judge PENROSE.